Judgment accordingly.

---

[ PHILADELPHIA, APRIL 13TH, 1840. ]

## ALLISON *against* THE· DELAWARE AND SCHUYLKILL CANAL COMPANY.

### CERTIORARI.

1. Under the act of the 12th of April, 1828, incorporating the Delaware and Schuylkill Canal Company, a person who may be injured by or receive damage from the works of the company, or by reason of the making of the canal, may commence proceedings, and obtain an assessment of damages, as soon as the injury or damage has been sustained by him ; although the canal has not been completed throughout.

2. On a certiorari to remove proceedings for the assessment of damages in the case of a canal, &c., the Supreme Court will not examine into exceptions which depend on depositions taken in the Court below, relating to the assessment of the damages.

THIS case came before the Court upon a *certiorari* to the District Court for the City and County of Philadelphia, to remove the proceedings in a certain suit instituted by Frances Allison against " The President, Managers and Company of the Delaware and Schuylkill Canal."

The proceedings in the Court below were commenced under the authority of an act of assembly passed on the 12th day of April, 1828, entitled, "An act to enable the governor of this commonwealth to incorporate a company for opening a canal and lock navigation between the rivers Delaware and Schuylkill, through the southern section of Philadelphia county ;" the material provisions of which are the following :

" SECTION 6. *And be it further enacted by the authority aforesaid,*

(Allison *v.* Canal Company.)

That the president and managers shall have full power and authority to appoint all officers necessary to supply vacancies, occasioned by death, resignation or otherwise; and also to appoint one or more superintendents of the works to be undertaken by them; and to hire and employ all such engineers, artists, workmen and labourers, to enter into all and singular the land and lands lying between the rivers Delaware and Schuylkill in the county of Philadelphia south of said city, and to lay out and survey such routes or tracks as may be most practicable for effecting a navigable canal between the said rivers Delaware and Schuylkill, by means of locks and all other needful devices, doing nevertheless as little damage as possible to the grounds and other enclosures in and over which they shall pass; and if in the opinion of the president and managers of the said Delaware and Schuylkill Canal Company, the introduction of any different mode or device, or any improvement hitherto adopted, or such as may hereafter be invented in the system of internal navigation, will be beneficial, it shall be lawful for them to make use of and employ the same from time to time: and as well for such purposes as for the necessary prosecution of the same, the said president and managers, and their engineers, workmen and labourers, to enter into and upon all and singular the land and lands intended or supposed to be the proper route for canal and lock navigation; and shall have the power to buy so much land along the track or route of the canal and adjoining thereto, and tenements, waters, watercourses, and all other real hereditaments as shall be necessary for the proper construction of said canal and other works necessary thereto: and on the application to the District Court for the City and County of Philadelphia, of any person or persons, or the executors, administrators or other legal representatives of any person or persons who shall be injured by, or receive damage from the works of said company; or by reason of the making of said canal, it shall be the duty of the said Court, at the election of the party making such application, to appoint five judicious freeholders of any neighbouring county, or award a venire directed to the sheriff of any adjoining county, to summon a jury of disinterested men from said adjoining county, whose duty it shall be to view the premises, to ascertain and report to the said Court what damages, if any, have been sustained by such person or persons, or those whom they represent, by reason of the said canal or other works; which report being confirmed by the Court, judgment shall be entered thereon, and execution, on motion, shall be issued in case of non-payment of the money awarded, with reasonable costs, to be assessed by the Court: and it shall be the duty of the freeholders or jury, as the case may be, in valuing any lands, tenements or hereditaments, or making an assessment of damages for other injuries or damages sustained, to take into consideration the advantage derived to the owner or owners of the premises, from the said canal or navigation

(Allison *v.* Canal Company.)

passing through the same : *Provided*, That in order to procure the location and construction of the canal in this act authorised, in such manner in all respects as shall be best calculated to promote and secure the public interests and extension of the great system of internal improvement, the company hereby incorporated shall not commence the construction of the canal until the location, dimensions and plan thereof shall have been approved of by the board of Pennsylvania Canal Commissioners ; and the said board are hereby authorised, if at any time they shall deem it necessary, to employ one or more able and skilful engineers to assist them therein."

" Section 16. *And be it further enacted by the authority aforesaid,* That before the company shall enter upon the land or other property owned or occupied by any individual or individuals for the purpose of constructing said canal or works connected therewith, they shall pay such damages as may be agreed upon or give security for the same, to be approved of by the ·District Court for the City and County of Philadelphia."

The last mentioned section was repealed by an act passed on the 17th day of March, 1836.

On the 23rd of June, 1838, the petition of Frances Allison was presented, setting forth that she had received damage in consequence of the opening of the canal through her land, and praying the appointment of five freeholders to view the premises, &c. On the 22d of December, 1838, five freeholders were accordingly appointed, who made a report on the 26th of June, 1839, awarding certain damages to the petitioner. The following exceptions were filed to this report.

" The defendants in the above case except to the report of the freeholders appointed to assess the damages, &c.

1st. Because the damages, if. any have been sustained in the above case, ought not to have been assessed, until the completion of the said canal.

2d. Because the said freeholders have not taken into consideration the advantages derived to the owner of the premises from the canal passing through the same.

3rd. Because the said freeholders have given the extreme value of the land taken, without any deduction for wharves, landing places, building lots, and other benefits which will accrue to the petitioner from the said canal.

4th. Because the said freeholders have assessed the damages stated in the said report, on the ground that the said canal will never be completed.

5th. Because the damages assessed in the above case are exces-

sive, and greatly beyond the fair value of the land taken for the purposes of the canal."

After argument, these exceptions were overruled; and on the 28th of September, 1839, judgment was entered on the report. On the 4th of October, a rule was obtained by the counsel for the petitioner to show cause why an execution should not be issued and why the bill filed by the plaintiff should not be assessed by the Court as her reasonable costs. On the 26th of October, 1839, a motion was made on the part of the defendants to recommit the report to the freeholders; founded upon certain depositions of the freeholders, in which they stated in substance that they included the supposed costs of the proceedings and the fee to the counsel of the petitioner in the damages awarded to her. On the 9th of November, 1839, the rule obtained on the 4th of October, by the counsel for the petitioner was made absolute, except so far as related to costs, the claim for which was waived by the petitioner; and on the same day the motion made on the part of the defendants to recommit the report to the freeholders was refused.

This certiorari was then taken; and on the return of the record the following errors were assigned.

"1. The Court erred in granting the prayer of the petition in this case; the same not setting forth that the canal was completed.

2. The Court erred in appointing a jury to view the premises and assess the damages, before the completion of the canal.

3. The damages, if any were sustained by the petitioner, ought not to have been assessed until the completion of the canal.

4. The jury or freeholders did not take into consideration the advantages derived to the owner of the premises from the canal passing through the same.

5. The jury or freeholders assessed the damages stated in their report, on the ground that the said canal will never be completed.

6. The jury or freeholders gave excessive damages in this case.

7. The jury or freeholders included in their assessment of damages, the costs, or supposed costs and expenses of the view, reference, their own pay, counsel fees, &c.

8. The Court erred in dismissing the exceptions, and confirming the report in this case.

9. The Court erred in making absolute the rule to show cause why execution should not be issued in the above case.

10. The Court erred in refusing to recommit the report to the freeholders.

(Allison v. Canal Company.)

11. The Court erred in discharging the motion to recommit the report to the freeholders."

Several other cases were removed at the same time and argued together.

Mr. *T. I. Wharton,* for the plaintiffs in error, contended—

1. That the proceedings were prematurely instituted, and that the damages ought not to have been assessed until the completion of the canal. *Commonwealth* v. *Fisher,* (1 *Penn. Rep.* 462.) *Commonwealth* v. *M'Allister,* (2 *Watts,* 190.)

2. That the report was bad, because the freeholders included the costs, &c. in the damages. *Watson on Arbitrations,* 94. *Buckley* v. *Ellmaker,* (13 *Serg. & Rawle,* 71.) *Hamilton* v. *Gallagher,* (4 *Yeates,* 202.) *Davis* v. *Canal Co.* (4 *Binn.* 296.) *Thellusson* v. *Cramond,* (1 *Wash. C. C. Rep.* 319.)

3. That this Court had a right to review these proceedings. *Walters* v. *Junkins,* (16 *Serg. & Rawle,* 414.) *Righter* v. *Rittenhouse,* (3 *Rawle,* 273.) *Hewit* v. *Ramsey,* (2 *Watts,* 91.) *Road in Bucks County,* (3 *Wharton,* 105.) *Rail Road* v. *Trimble,* (4 *Wharton,* 47.)

Mr. *Tyson,* (with whom was Mr. *G. M. Wharton,*) for the several petitioners argued—

1. That upon the true construction of the act of 1828, the petitioners had a right to a jury, as soon as the canal was completed on their land respectively; referring to art. vii. § iv. of the amended constitution.

2. That the exceptions to the report on the ground of the costs, were too late in the Court below; and at all events, that the Court would not re-hear the case on the depositions. *Graham on New Trials,* 173.   2 *Atk.* 319.   2 *Vesey,* 522.

PER CURIAM.—The exception to the appointment of viewers before the completion of the canal, is disposed of by the *Commonwealth* v. *M'Allister.*

Such of the other exceptions as have been urged, depend on depositions, which we have determined, perhaps after some contrariety of decision in cases of this kind, to be inadmissible; and this is to be taken for the established practice of the Court.

Proceedings affirmed.